United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EILEEN BEVERLY DUBIN, | No. C-10-05065 EDL |
| Plaintiff, | **ORDER GRANTING WITH LEAVE TO AMEND DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| BAC HOME LOANS SERVICING, | |
| Defendant. | |

On September 22, 2010, Plaintiff Eileen Dubin filed a complaint in the Marin County Superior Court against Defendants BAC Home Loans Servicing and Bank of America, alleging claims for violations of the California Civil Code, violation of the Truth in Lending Act and Regulation Z, unfair business practices, breach of contract, breach of the implied covenant of good faith and fair dealing, and quiet title. Defendants removed this matter on November 9, 2010. On November 16, 2010, Defendants filed a motion to dismiss. Plaintiff did not file an opposition to the motion to dismiss. The Court held a hearing on Defendants' motion to dismiss on January 5, 2011, and Plaintiff appeared. She requested an additional thirty days to oppose the motion. The Court granted that request and continued the hearing. Plaintiff filed her opposition on February 3, 2011, and Defendant filed a reply on February 11, 2011. On February 22, 2011, the Court held a further hearing on Defendants' motion to dismiss. For the reasons stated at the hearings and in this Order, the Court grants Defendants' motion to dismiss with leave to amend. Plaintiff shall file her amended complaint no later than March 24, 2011.

**Background**

Plaintiff alleges that she is the owner of real property located at 465 Ivy Road, Bolinas, California. Compl. ¶ 1. Plaintiff alleges that she executed a promissory note in favor of Bank of

America in the approximate amount of $666,000, which was secured by a Deed of Trust on the Ivy Road property. Compl. ¶ 6. The Deed of Trust shows that Plaintiff entered into a loan with lender CTX Mortgage Company on July 26, 2005 in the principal amount of $740,000. See Defendants' Request for Judicial Notice ("RJN") Ex. A.[1]

Plaintiff alleges that on multiple occasions, she sought to modify her loan due to hardships that she incurred as a result of the economy and her deteriorating health. Compl. ¶ 15. At the time that Plaintiff began to experience financial difficulties which resulted from serious illness, she allegedly contacted Bank of America to seek assistance in modifying her loan to avoid foreclosure. Compl. ¶ 17. Plaintiff alleges that Bank of America was aware of her requests to modify her loan, and had been advised on several occasions that hardship resulted from serious illness that gravely affected Plaintiff's earning capacity. Compl. ¶ 18. Plaintiff allegedly also explained to Bank of America that the prognosis for Plaintiff's recovery was very positive and therefore the hardship would not be permanent. Compl. ¶ 18. Bank of America allegedly refused to help her avoid foreclosure, and willfully obstructed her efforts to dispose of the Ivy Road property by means of a short sale. Compl. ¶ 19.

A Notice of Default and Election to Sell under Deed of Trust was recorded in Marin County on August 24, 2009. See Defendants' Request for Judicial Notice ("RJN") Ex. 2. Plaintiff alleges that on or about November 25, 2009, a Notice of Trustee's Sale was recorded in Marin County. Compl. ¶ 21; RJN Ex. 3. The foreclosure sale is pending.

---

[1] Defendants' Request for Judicial Notice is granted. On a motion to dismiss, a court normally may not look to matters beyond the complaint without converting the motion into one for summary judgment. See Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991). There are two exceptions to this rule: (1) a court may take judicial notice of material which is either submitted as part of the complaint or necessarily relied upon by the complaint; and (2) a court may take judicial notice of matters of public record. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Under Federal Rule of Civil Procedure 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Furthermore, a court "shall take judicial notice if requested by a party and supplied with the necessary information." See Fed. R. Civ. P. 201(d); Mullis v. United States Bank, 828 F.2d 1385, 1388 n. 9 (9th Cir. 1987). Here, the documents contained in the Request for Judicial Notice are judicially noticeable under Federal Rule of Evidence 201.

2

**Legal Standard**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**Discussion**

**1.   Failure to Tender**

Defendants argue that all of Plaintiffs' claims should be dismissed because Plaintiff has not tendered or offered to tender. Plaintiff does not dispute that she failed to make mortgage payments.

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." Karlsen v. American Sav. & Loan Assn., 15 Cal.App.3d 112, 117 (1971); see also Arnolds Management Corp. v. Eischen, 158 Cal.App.3d 575, 578 (1984) ("It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security."). California district courts apply the tender rule in examining wrongful

3

foreclosure claims. See, e.g., Alicea v. GE Money Bank, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for foreclosure."); Montoya v. Countrywide Bank, 2009 WL 1813973, at * 11-12 (N.D. Cal. June 25, 2009) ("Under California law, the 'tender rule' requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the debt."). The application of the "tender rule" prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." Williams v. Countrywide Home Loans, 1999 WL 740375, at *2 (N.D. Cal. Sept. 15, 1999).

Defendant, however, has cited no case applying the tender rule where, as here, there has been no foreclosure sale. Accordingly, Defendant's Motion to Dismiss based on failure to tender is denied.

**2.     First claim for violation of Civil Code § 2923.5, § 2923.5, § 2923.54 and § 2924(b)**

In this claim, Plaintiff appears to focus on Defendants' alleged failure to provide a declaration attesting that the "mortgagee, beneficiary, or authorized agent has tried with due diligence to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.5." Compl. ¶ 34. The requirements of section 2923.5 are narrow, and do not require the lender to have much more than minimal contact with a debtor to assess the debtor's position and inform them of various options. See Mabry v. Superior Court, 185 Cal.App.4th 208, 232 (2010) (construing section 2923.5 narrowly). The Mabry court stated:

> First, to the degree that the words "assess" and "explore" can be narrowly or expansively construed, they must be narrowly construed in order to avoid crossing the line from state foreclosure law into federally preempted loan servicing. Hence, any "assessment" must necessarily be simple-something on the order of, "why can't you make your payments?" The statute cannot require the lender to consider a whole new loan application or take detailed loan application information over the phone. (Or, as is unlikely, in person.)
>
> Second, the same goes for any "exploration" of options to avoid foreclosure. Exploration must necessarily be limited to merely telling the borrower the traditional

4

> ways that foreclosure can be avoided (e.g., deeds "in lieu," workouts, or short sales), as distinct from requiring the lender to engage in a process that would be functionally indistinguishable from taking a loan application in the first place. In this regard, we note that section 2923.5 directs lenders to refer the borrower to "the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency." The obvious implication of the statute's referral clause is that the lender itself does not have any duty to become a loan counselor itself.
>
> Finally, to the degree that the "assessment" or "exploration" requirements impose, in practice, burdens on federal savings banks that might arguably push the statute out of the permissible category of state foreclosure law and into the federally preempted category of loan servicing or loan making, evidence of such a burden is necessary before the argument can be persuasive. For the time being, and certainly on this record, we cannot say that section 2923.5, narrowly construed, strays over the line.

Mabry, 185 Cal.App.4th at 232.

Here, Plaintiff does not allege that Defendants failed to contact her to discuss her financial situation. Rather, Plaintiff alleges that she contacted Defendants on multiple occasions (Compl. ¶ 15), and provided documentation to Defendants and that Defendants requested additional documentation (Compl. ¶ 16). Further, Plaintiff alleges that a section 2923.5 declaration was made. Compl. ¶ 24; RJN Ex. B. Accordingly, Defendant's Motion to Dismiss this claim is granted with leave to amend.

**3.      Second claim for violation of the Truth in Lending Act and Regulation Z**

Plaintiff alleges that her loan transaction was subject to her right of rescission under the Truth in Lending Act (TILA) and Regulation Z. Compl. ¶ 39. She alleges that Defendants violated TILA and Regulation Z by failing to "deliver to Plaintiff two copies of the notice of the right to rescind which identified the transaction, clearly disclosed the security interests in Plaintiff's principal dwelling, clearly and conspicuously disclosed Plaintiff's right to rescind the transaction, clearly and conspicuously disclosed how to exercise the right to rescind the transaction, clearly and conspicuously disclosed the effects of rescission, and clearly and conspicuously disclosed the date the rescission period expired." Compl. ¶ 40. Plaintiff also alleges that Defendants failed to make all material disclosures, including the amount financed, the finance charge and the interest. Compl. ¶ 41. Plaintiff alleges that this complaint constitutes her notice of rescission. Compl. ¶ 43. Plaintiff argues that Defendants induced Plaintiff to borrow substantially more money than she was qualified to borrow and an amount beyond her ability to pay. Compl. ¶ 46.

5

**TILA rescission claim**

TILA only applies to refinance and non-purchase money loans secured by a principal dwelling. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.15(a), 226.23(a). There is no statutory right of rescission "where the loan at issue involves the creation of a first lien to finance the acquisition of a dwelling in which the customer resides or expects to reside." Betancourt v. Countrywide Home Loan, Inc., 344 F.Supp.2d 1253, 1261 (D. Colo. 2004); see Watts v. Decision One Mortgage Co., LLC., 2009 WL 648669, *4 (S.D. Cal. Mar. 9, 2009) (dismissing with prejudice TILA rescission claim in that "while home equity loans and refinancing transactions would be amenable to rescission, Plaintiff's purchase money mortgage is not"); Karma v. Columbia Home Loans, LLC, 654 F.Supp.2d 259 (E.D. Pa. 2009) ("Here, it is undisputed that the loan was obtained to finance the acquisition of the plaintiff's dwelling. Rescission therefore is not available for the loan at issue. This claim is dismissed."); Wellman v. First Franklin Home Loan Services, 2009 WL 2423961, *2 (S.D. Cal. Aug. 4, 2009) ("'residential mortgage transactions' such as Plaintiff's purchase money mortgage, are expressly excluded from coverage"); Manown v. Cal-Western Reconveyance Corp., 2009 WL 2406335, *5 (S.D. Cal. Aug. 4, 2009) ("Plaintiffs are not entitled to seek rescission for their purchase money mortgage.").

Here, there are no allegations that this loan transaction was a refinance or non-purchase money loan. Further, Defendants argue that Plaintiff has failed to allege facts that would extend the normal three-day right to rescind period under TILA. The three-day rescission period may be extended to three years where there is a failure by the creditor to provide accurate material disclosures or the notice of right to cancel in the prescribed manner. 12 C.F.R. § 226.15(a)(3); 12 C.F.R. § 226.23(a)(3); see also 12 C.F.R. § 226.32(a)(3) ("The term 'material disclosures' means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and limitations referred to in §§ 226.32(c) and (d) and 226.35(b)(2)."). Here, Plaintiff alleges generally that Defendants failed to provide her two copies of the notice of the right to rescind. However, even if the rescission period is extended to three years, Plaintiff did not file her complaint until more than five years after the transaction at issue. Therefore, her TILA rescission claim fails.

6

**TILA damages claim**

Damages claims under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). "[A]s a general rule the limitations period starts at the consummation of the transaction." King v. California, 784 F.2d 910, 915 (9th Cir.1986); see also Meyer v. Ameriquest Mortgage Co., 342 F.3d 899, 902 (9th Cir. 2003) ("The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed."). Here, any damages claim under TILA is time-barred because the loan was executed on July 26, 2005, and this case was not filed until November 9, 2010. The Ninth Circuit has rejected tolling of the TILA statute. See Hubbard v. Fidelity Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996) ("Hubbard argues the statute of limitations should have been tolled until she discovered 'there were possible "anomalies" or errors in her loan.' However, nothing prevented Hubbard from comparing the loan contract, Fidelity's initial disclosures, and TILA's statutory and regulatory requirements."). Accordingly, Plaintiff's TILA damages claim is time-barred and Defendants' motion to dismiss that claim is granted without leave to amend.

**4.    Third claim for unfair business practices**

Plaintiff alleges that Defendants have engaged in unlawful, unfair and fraudulent business practices, including violations of TILA, the Home Ownership and Equity Protection Act (HOEPA), Regulation Z and state law. Compl. ¶¶ 52, 57. Plaintiff alleges that Defendants sought to unfairly profit by their conduct to the detriment of Plaintiff and others like her, and that Defendants were part of a "plan to lull consumers into the false belief that their lenders were seeking to comply with the mandates of Federal and State legislation to aid homeowners in avoiding foreclosure," but in reality, "Defendants never intended to modify the Plaintiff's loan because it was to their financial benefit to regain title to the property to take advantage of certain federally funded insurance programs and tax write-offs." Compl. ¶ 62. Plaintiff alleges that the modification extended to Plaintiff was "merely pretextual and was not tendered in good faith." Compl. ¶ 62.

California Business and Professions Code section 17200, et seq., prohibits "any unlawful, unfair or fraudulent business act or practice." "This cause of action is derivative of some other illegal conduct or fraud committed by a defendant, and a plaintiff must state with reasonable

7

particularity the facts supporting the statutory elements of the violation." <u>Lomboy v. SCME Mortgage Brokers</u>, 2009 WL 1457738, at *6 (N.D. Cal. May 26, 2009) (internal citation omitted). Further, when charging fraud against a business entity, the pleading requirements are more strict:

> The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.

<u>Tarmann v. State Farm Mutual Auro Ins. Co.</u>, 2 Cal.App.4th 153, 157 (1991). Here, Plaintiff's claim brought under section 17200 is not sufficiently particular to satisfy the pleading standards.

First, Plaintiff does not describe the unfair nature of the conduct. See <u>Smith v. State Farm Mutual Automobile Ins. Co.</u>, 93 Cal.App.4th 700, 718-19 (2001) (citing <u>People v. Casa Blanca Convalescent Homes, Inc.</u>, 159 Cal.App.3d 509 (1984)) ("The court concluded that an 'unfair' business practice occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'") (citation omitted); <u>State Farm Fire & Casualty Co. v. Superior Court</u>, 45 Cal.App.4th 1093, 1103-04 (1996) ("The test of whether a business practice is unfair "involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. . . ."). Also, Plaintiff has not established any unlawful conduct because Plaintiff's other claims fail that are based on violation of another law. See <u>Farmers Ins. Exch. v. Superior Court</u>, 2 Cal.4th 377, 383 (1992) ("[i]n essence, an action based on Business and Professions Code section 17200 to redress an unlawful business practice 'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder.").

Finally, Plaintiff's complaint does not adequately allege fraudulent conduct, which requires pleading facts sufficient to show that Defendants' claims or statements were false or misleading. See <u>National Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.</u>, 107 Cal.App.4th 1336, 1342 (2003) (stating that the plaintiff must allege facts showing that the defendant's conduct was

8

false or misleading). Plaintiff has alleged that there was a sham transaction, but she does not allege sufficient facts to state a fraud claim against the corporate Defendants. Accordingly, Defendants' motion to dismiss this claim is granted with leave to amend.

### 5. Fourth claim for breach of contract

Plaintiff alleges that a mortgage is a contract (Compl. ¶ 64), and that therefore, the original Deed of Trust agreement is a contract that Defendants breached with they initiated foreclosure proceedings on Plaintiff's home prior to attempting to contact her to discuss her financial condition and explore options to avoid foreclosure. Compl. ¶¶ 65, 67. She alleges that Defendants were contractually obligated to act in accordance with state law, specifically Civil Code section 2923.5 and 2924, when initiating foreclosure proceedings. Compl. ¶ 66.

Here, however, Plaintiff has failed to allege a contract with Defendants because Defendants were not parties to the original loan agreement. Accordingly, Defendants' motion to dismiss this claim is granted with leave to amend.

### 6. Fifth claim for breach of implied covenant of good faith and fair dealing

Plaintiff alleges that good faith and fair dealing is appliable to the parties in this case by virtue of California Civil Code section 2923 and the prevalent practices in the mortgage industry. Compl. ¶ 71. Plaintiff alleges that Defendants knew or should have known that her property had substantial negative equity and that Defendants would suffer a significant monetary loss immediately following a trustee sale. Compl. ¶ 72. Plaintiff alleges that Defendants failed to undertake that comparative risk/loss analysis contemplated by the legislature in connection with loan modification. Compl. ¶ 73. Plaintiff alleges that she would have been able to pay the mortgage if it had been modified. Compl. ¶ 74. Plaintiff alleges that Defendants breached the covenant of good faith and fair dealing when they refused a loan modification or other loan workout plan for Plaintiff's loan. Compl. ¶ 75. Plaintiff alleges that Defendants failed to act in good faith in the performance of their obligations, and that Plaintiff timely performed all required obligations. Compl. ¶¶ 76-77. Finally, Plaintiff alleges that Defendants sought to take unfair advantage of their special relationship with Plaintiff. Compl. ¶ 78.

The covenant of good faith is an implied term arising out of a contract itself. <u>Kim v. Regents</u>

9

of Univ. of Cal., 80 Cal.4th 160, 164 (2000). "The existence of a contractual relationship is thus a prerequisite for any action for breach of the covenant." Id. "It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." Carma Developers (California), Inc. v. Marathon Development California, Inc., 2 Cal.4th 342, 373 (1992) (stating that an implied covenant of good faith and fair dealing cannot contradict the express terms of a contract). Here, although Plaintiff alleges that there is a contractual relationship between Plaintiff and Defendants, the Deed of Trust shows that the loan agreement was not made between Plaintiff and Defendants. See RJN Ex. A.

Further, in Foley v. Interactive Data Corp., 47 Cal.3d 654, 693 (1988), the California Supreme Court limited the extension of the tort remedies for violation of the implied covenant of good faith and fair dealing. See Price, 213 Cal.App.3d at 478 ("But the implications of the court's analysis [in Foley] presage a close scrutiny of tort recovery for breach of the implied covenant of good faith and fair dealing outside of the insurance context. The decision surely precludes the sort of loose extension of tort recovery, based on 'quasi-fiduciary' relationship, sanctioned in Commercial Cotton v. United California Bank, supra, 163 Cal.App.3d 511."). In a case interpreting Foley, the state court of appeals stated:

> While Foley may leave this question open, albeit narrowly, it is clear from the court's failure to find sufficiently insurance-like characteristics to justify permitting tort actions against employers who discharge employees in bad faith, that it would not permit such an action in an ordinary commercial context where a lender refuses to honor an oral commitment to extend or "roll over" short-term loans. Foley, impliedly if not expressly, limits the ability to recover tort damages in breach of contract situations to those where the respective positions of the contracting parties have the fiduciary characteristics of that relationship between the insurer and insured.

Mitsui Manufacturers Bank v. Superior Court, 212 Cal.App.3d 726, 730 (1989).

Thus, here, where the relationship between Plaintiff and Defendants is that of lender and borrower, California law would not provide a claim for breach of the covenant of good faith and fair dealing. Accordingly, Defendants' motion to dismiss this claim is granted without leave to amend.

**7.    Sixth claim for quiet title**

Plaintiff alleges that Defendants have no right or interest in the property. Compl. ¶ 83. Plaintiff seeks to quiet title, and desires to restore possession to herself. Compl. ¶ 84.

Plaintiff cannot state a claim to quiet title unless she alleges an ability to tender the amount of the debt, which she has not done. See Aguilar v. Bocci, 39 Cal. App. 3d 475, 478 (1974) (stating that a trustor cannot "quiet title without discharging his debt. The cloud upon his title persists until the debt is paid. He is entitled to remain in possession, but cannot clear his title without satisfying his debt.") (citation omitted);; Watson v. MTC Financial, Inc., 2009 WL 2151782, at *4 (E.D. Cal. Jul. 17, 2009) (quoting Shimpones v. Stickney, 219 Cal. 637, 649 (1934)) ("[A] mortgagor cannot quiet his title against the mortgagee without paying the debt secured.").

Further, a basic requirement of an action to quiet title is an allegation that plaintiffs "are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust." Kelley v. Mortgage Elec. Reg. Sys., Inc., 642 F. Supp. 2d 1048, 1057 (N. D. Cal. 2009). Although Plaintiff alleges that she has performed all obligations required of her under the loan (Compl. ¶ 77), that is belied by Plaintiff's other allegations that she has not been able to pay her mortgage payments (Compl. ¶¶ 17-18). Thus, Defendants' motion to dismiss this claim is granted with leave to amend.

**8.     Seventh claim for Negligent Infliction of Emotional Distress**

Plaintiff alleges that Defendants' conduct in this case was undertaken with reckless disregard of the probability of causing emotional distress. Compl. ¶ 87. Plaintiff alleges that she has suffered extreme emotional distress. Compl. ¶ 88.

To state a claim for negligent infliction of emotional distress, Plaintiff must allege the elements for negligence: (1) a legal duty owed by Defendants to Plaintiff; (2) breach of that duty; (3) injury to Plaintiff as a result of the breach; and (4) damage to Plaintiff. See 4 Witkin, California Procedure, Pleadings, § 537 (4th ed.) at 624. Here, Plaintiff has failed to allege any duty, and it is doubtful whether Defendants had a duty to Plaintiff. See, e.g., Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal.App.3d 1089, 1096 (1991) ("However, as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."). Further, Plaintiff's allegations of outrageous conduct are conclusory, and the conduct stems from ordinary debt collection procedures that do not support an emotional distress claim. See Ross v. Creel Printing

11

and Publishing Co., 100 Cal.App.4th 736, 745 n.4 (2002) ("The assertion of an economic interest in good faith is privileged, even if it causes emotional distress."). Therefore, Defendants' motion to dismiss this claim is granted with leave to amend.

**Conclusion**

Accordingly, Defendants' Motion to Dismiss is granted with leave to amend as to her first, third, fourth and sixth claims. Plaintiff shall file her amended complaint no later than March 24, 2011.

**IT IS SO ORDERED.**

Dated: February 28, 2011

*Elijah D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge